IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | NO. 3:11-cr-00083-1 |
| v. | ) | |
| | ) | JUDGE RICHARDSON |
| | ) | |
| ZEESHAN KHALID SYED | ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's *pro se* Motion for Compassionate Release (Doc. No. 1179),[1] supplemented by the Supplemental Motion for Compassionate Release (Doc. No. 1195) filed by his appointed counsel. Via these motions, Defendant seeks a reduction of his 216-month sentence and immediate release from the custody of the Bureau of Prisons ("BOP"), pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Like many other federal inmates in this district and around the country, Defendant claims that the ongoing COVID-19 pandemic, as applied to his specific health profile, satisfies the requirement of "extraordinary and compelling reasons" necessary for this Court to grant "compassionate release" under Section 3582(c)(1)(A)(i), and that compassionate release is otherwise appropriate in his case. The Government has filed a response in opposition, (Doc. No. 1201, "Response"), arguing that Defendant has not shown as required "extraordinary and compelling reasons" for compassionate release or that he is not a danger to the safety of other persons, and that other applicable considerations counsel strongly against

---

[1] Such motions are also known as ones for "compassionate release"; thus, the Court refers to both "compassionate release" and "sentence modification" throughout this opinion when referring to Defendant's requested relief. *See United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at n.2 (D. Utah Feb. 18, 2020) ("In this order, the court uses the phrase 'compassionate release' and 'sentence modification' interchangeably, which is consistent with how other courts have used the terms."); *United States v. McDonald*, No. 94-CR-20256-1, 2020 WL 3166741, at *1 (W.D. Tenn. June 8, 2020).

compassionate release.

BACKGROUND

On October 11, 2012, Defendant was charged in two counts of a six-count superseding indictment filed against him and seven co-defendants. Specifically, the Superseding Indictment charged Defendant: in Counts One with possession with intent to distribute a mixture and substance containing cocaine and possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846, respectively; and in Count Two with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). On November 5, 2012, he pled guilty to both counts. (Doc. No. 472). In the Plea Agreement, Defendant admitted to distributing an extremely large amount of cocaine and marijuana in Nashville over the course of several years—at least 150 kilograms of cocaine and at least 100 kilograms of marijuana. (*Id*. at 14). Additionally, he admitted to acting as the leader and manager of the distribution ring. (*Id*.). He further admitted to attempting to murder a witness who had cooperated with the Federal Bureau of Investigation. (*Id*. at 15). On December 5, 2015, the Court sentenced Defendant to 216 months' incarceration and five years' supervised release. (Doc. No. 1064).

LEGAL STANDARDS FOR "COMPASSIONATE RELEASE"

Under 18 U.S.C. § 3582(c)(1)(A), as modified by the Section 603(b)(1) First Step Act of 2018, P.L. 115-391, 132 Stat. 5239,[2] the district court may under certain circumstances grant a

---

[2] That paragraph of Section 603 provides:

 (b) INCREASING THE USE AND TRANSPARENCY OF COMPASSIONATE RELEASE.—Section 3582 of title 18, United States Code, is amended—
    (1) in subsection (c)(1)(A), in the matter preceding clause (i), by inserting after ''Bureau of Prisons,'' the following: ''or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . .''

defendant's motion for compassionate release if what the Court will call the "exhaustion requirements" have been satisfied—*i.e.*, "[either] the defendant has fully exhausted all administrative rights to appeal a failure of [BOP] to bring a motion [for compassionate release] on the defendant's behalf or [there has been a] lapse of 30 days since the receipt of such a request [for BOP to file such a motion] by the warden of the defendant's facility, whichever is earlier."

Once it properly can act on a motion brought under 18 U.S.C. § 3582(c)(1)(A), the district court can reduce a sentence under that provision (for any defendant younger than 70 years old)[3] only if it finds extraordinary and compelling reasons to do so. *See* 18 U.S.C. § 3582(c)(1)(A)(i). The defendant bears the burden of showing that "extraordinary and compelling reasons" exist to justify release under the statute. *United States v. Hayward*, No. CR 17-20515, 2020 WL 3265358, at *1 (E.D. Mich. June 17, 2020). And the Court does not write on a clean slate in considering what qualifies as "extraordinary and compelling reasons."

Congress tasked the Sentencing Commission with promulgating "general policy statements regarding . . . the appropriate use of . . . the sentence modification provisions set forth in [section] 3582(c) of title 18. . . ." 28 U.S.C. § 994(a)(2)(C). Congress directed the Sentencing Commission, in promulgating these policy statements, to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). In response to these congressional instructions, the Sentencing Commission promulgated U.S.S.G. § 1B1.13, and its application note, which collectively comprise the policy statement(s).

Practitioners of federal criminal law are accustomed to treating the Sentencing

---

[3] This subparagraph provides an alternative ground for relief for defendants who are at least 70 years of age. *See* 18 U.S.C. § 3582(c)(1)(A). It is inapplicable here, however, because Defendant is only 40.

Commission's policy statements as advisory only (especially in the aftermath of *United States v. Booker*, 543 U.S. 220 (2005)). They are exactly that in the context of a defendant's original sentencing—but not in the context of a motion under Section 3582(c)(1)(A). In the latter context, they are by statute mandatory, inasmuch as Congress has prohibited courts from granting a sentencing reduction unless "such a reduction is consistent with applicable policy statements issued by" the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).[4]

Together, U.S.S.G. § 1B1.13 and its application note do two things that are relevant here. First, they define, in Application Note 1, "extraordinary and compelling circumstances" to apply in (and only in) situations falling within one or more of five separate and particular categories, which the Court discusses below. *See* U.S.S.G. § 1B1.13 n.1(A)(i)-(ii), (B), (C) & (D).[5] Second, they prescribe additional requirements for obtaining a sentence reduction where the defendant does meet the threshold requirement of "extraordinary and compelling circumstances."[6] Specifically, for a defendant not yet 70 years old (such as Defendant), the court may reduce a sentence if (1) extraordinary and compelling reasons warrant a reduction, *and* (2) the defendant is not a danger to the safety of any other person or to the community, *and* (3) the reduction is consistent with the policy statement. *See* U.S.S.G. § 1B1.13(1)(A), (2) and (3). The Application Note indicates the

---

[4] In *Booker*, the Supreme Court found unconstitutional (*i.e.*, violative of the Sixth Amendment) Congress's directive that the Sentencing Guidelines are generally what was referred to as "mandatory," meaning that sentence generally had to be imposed within the guideline range calculated using the Sentencing Guidelines. To say the least, this limited Congress's ability to make anything about the Sentencing Guidelines mandatory in the context of an original sentencing. But such limitations do not exists in the context of a motion for sentence reduction under Section 3582(c)(1)(A), wherein the Sixth Amendment concerns driving the *Booker* decision are entirely absent.

[5] The Application Note also contains various other instructions for considering whether extraordinary and compelling circumstances exist. Such instructions need not be discussed here, as the Court herein resolves the Motion without any need to refer to them.

[6] It is important to note that these other requirements—being, after all, *requirements*—are mandatory. That is to say, a defendant is *not* eligible for compassionate release merely because there are "extraordinary and compelling reasons" within the meaning of Application Note 1(A).

third requirement may be redundant of the first two, inasmuch as it states that "any reduction made . . . for the reasons set forth in subdivisions (1) and (2) [*i.e.*, U.S.S.G. § 1B1.13(1) & (2)] is consistent with this policy statement." *Id.* at n.5.[7]

If the court does find these (two or three depending on how one looks at it) requirements satisfied, the defendant has met the basic eligibility for compassionate release. But even then, the Court does not automatically or necessarily grant the motion for a reduction; instead, it *may*, after considering the factors set forth in 18 U.S.C. § 3553(a), reduce the term of imprisonment (and may impose a term of probation or supervised release that does not exceed the unserved portion of the original term of imprisonment). *See* 18 U.S.C. § 3582(c)(1)(A).

The (familiar) sentencing factors set forth in Section 3553(a) include:

>   (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
>   (2) the need for the sentence imposed—
>       (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>       (B) to afford adequate deterrence to criminal conduct;
>       (C) to protect the public from further crimes of the defendant; and
>       (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
>   (3) the kinds of sentences available;
>
>   (4) the kinds of sentence and the sentencing range established for—
>       (A) the applicable category of offense committed by the applicable category of defendant as set forth in the . . .
>           i) [United States Sentencing Guidelines, ("U.S.S.G.")]—
>           ii) [in effect at the time of sentencing]

---

[7] Like many redundancies, this one may seem odd due to its apparent unnecessariness. But it seems motivated by the valid desire to ensure that the Sentencing Commission's criteria for a sentencing reduction expressly both: (a) included the congressional requirement, discussed below, that any reduction be "consistent with applicable policy statements issued by" the Sentencing Commission; and (b) clarified that the required consistency involved nothing more than satisfaction of U.S.S.G. § 1B1.13(1) & (2).

(5) any pertinent policy statement—
    A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code; and
    B) [and in effect at the time of sentencing]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Relevant to factor number (5), as discussed above, the Sentencing Commission has issued a binding policy statement regarding reduction of a term of imprisonment under Section 3582(c)(1)(A). *See* U.S.S.G. § 1B1.13. As further mentioned above, Application Note 1 to U.S.S.G. § 1B1.13 speaks to what constitutes "extraordinary and compelling reasons," identifying five categories of situations where such reasons may be found to exist. Two of the five involve the defendant's medical condition, *i.e.*: (i) the defendant is suffering from a terminal illness; or (ii) the defendant is suffering from a serious physical or medical condition, or serious functional or cognitive impairment, or deteriorating physical or mental health due to the ageing process, that substantially diminishes the defendant's ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. *See* U.S.S.G. § 1B1.13 n.1(A). The next two categories relate to defendants over 65 and defendants with particular grave family circumstances, respectively; they are not applicable to the instant Motion.

As for the last of the five categories (sometimes referred to as the "residual" or "catchall" provision), the Application Note describes it as encompassing the situation where, "*[a]s determined by the Director of the Bureau of Prisons*, there exists in the defendant's case an extraordinary and compelling reason *other* than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 n.1(D) (emphasis added).

## THE PARTIES' RESPECTIVE POSITIONS

In the Motion, Defendant relies on the prevailing COVID-19 pandemic and his medical condition, high blood pressure. Defendant assets that "his hypertension renders him unable to care for himself or protect himself from Covid-19 while in the custody of the BOP." (Doc. No. 1195 at 8). As a result, he claims, he has shown "extraordinary and compelling reasons" for his compassionate release under Application Note 1(A)(ii)(I). (*Id*. at 8-9). Defendant further argues that the Section 3553(a) factors weigh in favor of granting his release, because his time served reflects the seriousness of his offenses, adequately serves the need for deterrence, and serves the purpose of further promoting his rehabilitation. (*Id*. at 10).

The Government argues in response that Defendant has not shown "extraordinary and compelling reasons" as required for compassionate release, because his medical records indicate that Defendant's hypertension is well-managed while he is incarcerated. (Doc. No. 1201 at 7-11). The Government also argues that the Motion should be denied because the factors under Section 3553(a) militate against granting the Motion. (*Id.* at 12-14). Specifically, the Government asserts that the nature and circumstances of the underlying offenses, and the danger Defendant would pose to the community if he were released weigh against granting his request. (*Id*. at 13).

## ANALYSIS

### I. EXTRAORDINARY AND COMPELLING REASONS

In addressing the merits, the Court first must determine whether "extraordinary and compelling reasons" exist for Defendant's compassionate release under the standards set forth by U.S.S.G. § 1B1.13 and its application note. Defendant bears the burden to show that extraordinary and compelling reasons exist warranting his release. *United States v. Shabudin*, 445 F. Supp. 3d 212, 214 (N.D. Cal. May 12, 2020); *United States v. Crouch*, No. 5:19-CR-00029-TBR, 2020 WL

1963781, at *3 (W.D. Ky. Apr. 23, 2020) ("[Defendant's] circumstances do not meet the burden of extraordinary and compelling.").

As noted, in the instant case Defendant relies upon the above-referenced medical condition (hypertension), which he claims constitutes, when combined with the COVID-19 pandemic, an extraordinary and compelling reason. Such an assertion, as often is the case on compassionate release motions, asks the Court to put itself in the difficult position of making medical assessments it is simply not qualified to make.

As it happens, however, in the Court's experience defendants and the Government alike tend to refer (and defer) to the views of the Centers for Disease Control and Prevention ("CDC") when making their arguments for "extraordinary and compelling reasons" within the meaning of Application Note 1(A). Typically, neither side makes more than a minimal (if any) reference to the views of anyone else regarding the relationship between COVID-19 and the defendant's (alleged) medical conditions.

As for the Government, its deference to the CDC's views is typically manifested primarily in the following manner: if the defendant suffers from what the Government accepts to be a "chronic" condition, and if the CDC says that the particular chronic condition is one that places those suffering from it at a higher risk from COVID-19, the Government concedes that there are "extraordinary and compelling circumstances" such that the primary requirement for compassionate release is satisfied. However, the Government makes no such concession here, presumably because it does not accept that the preconditions for such a concession have been satisfied, inasmuch as the CDC indicates that hypertension merely "might" place a person at elevated risk of severe illness from COVID-19. *See Coronavirus Disease 2019 (COVID-19): People with Certain Medical Condition*s, CDC, https://www.cdc.gov/coronavirus/2019-

ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Oct. 9, 2020).

As for the moving defendant, he or she typically effectively accepts that the question of whether extraordinary and compelling circumstances exist should be answered by reference to the CDC's view on whether the defendant's condition places him or her at a higher risk from COVID-19. Here, however, Defendant cites not only the CDC's views, but also additional sources: two articles from April 2020 that he contends demonstrate that "high blood pressure is increasingly seen as a dangerous complicating factor." (Doc. No. 1195 at 4-5 (citing Erika Edwards, *In sickest COVID-19 patients, underlying conditions are common, large study finds: High blood pressure, obesity and prediabetes are risk factors for severe cases*, NBC News, Apr. 22, 2020 https://www.nbcnews.com/health/health-news/sickest-covid-19-paients-underlying-conditions-are-common-large-study-n1189906 (last accessed Oct. 9, 2020); Meredith Wadman, *How does coronavirus kill? Clinicians trace a ferocious rampage through the body, from brain to toes*, Science Magazine, Apr. 17, 2020, https://www.sciencemag.org/news/2020/04/how-does-coronavirus-kill-clinicians-trace-ferocious-rampage-through-body-brain-toes (last accessed Oct. 9, 2020)).

But however reasonable the views of these writers might have been when expressed six months ago—a topic on which the undersigned is not qualified to comment authoritatively—they were based on information available at the time. Undoubtedly, a great deal more has since been learned about the risk from COVID-19—and yet the CDC still has not moved the needle on hypertension from "might" to "does" increase the risk. That is not to say that the CDC necessarily has better views than those of the two authors merely because it is the CDC; on that point, the undersigned would not venture to say. It is to say, instead, that the CDC's current views are more *informed* than those presented six months ago. Based on the most current information, although

the Court credits that hypertension "might" place a person at elevated risk of severe illness from COVID-19, the Court cannot go any further than that on the current record. It therefore concludes that Defendant's hypertension does not constitute extraordinary and compelling reasons for his release.

Numerous courts have denied prisoners' motions for compassionate release when the basis of the motion is the medical condition of hypertension combined with the COVID-19 pandemic. *See United States v. Cox*, No. 13-CR-20779-02, 2020 WL 4581692, at *1 (E.D. Mich. Aug. 10, 2020) (explaining that a diagnosis of hypertension does not constitute extraordinary and compelling reasons and noting that "hypertension is a common medical condition shared by over 100 million Americans."); *United States v. Hall*, No. CR JKB-04-323, 2020 WL 4582712, at *2 (D. Md. Aug. 10, 2020) (explaining that the defendant's hypertension diagnosis does "not sufficiently differentiate him form the thousands of similarly situated incarcerated individuals to constitute extraordinary and compelling reasons."); *United States v. Chambers*, No. 18-47 2020 WL 4260445, at *4 (E.D. La. July 24, 2020) (denying motion for compassionate release for 51-year-old male defendant with hypertension and other alleged medical conditions, explaining that "courts have found that hypertension does not amount to an extraordinary or compelling reason for release" during the COVID-19 pandemic) (collecting cases); *United States v. Jordan*, No. 09-CR-20490, 2020 WL 4016087, at *2 (E.D. Mich. July 16, 2020) (noting that "the CDC believes that hypertension 'might be' a COVID-19 risk factor, but this determination is still uncertain"). Moreover, current medical research indicates that "the link between hypertension and COVID-19 is unclear." *See COVID-19 and Hypertension: What We Know and Don't Know*, Am. College of Cardiology, July 6, 2020, https://www.acc.org/latest-in-cardiology/articles/2020/07/06/08/15/covid-19-and-hypertension (last accessed Oct. 8, 2020).

Moreover, per Defendant's medical records, his hypertension appears to be controlled while incarcerated. Additionally, Defendant suffers no other chronic condition and is only 40 years old, which distinguishes his case from those where defendants with hypertension were at a heightened risk of a bad outcome if infected due to either their age or other conditions, and thus granted release. *See, e.g., United States v. White*, No. 3:17-cr-00098, 2020 WL 4530931, at *2 (M.D. Tenn. Aug. 6, 2020) ("[The defendant's] high blood pressure, macular degeneration, and acute respiratory infection are serious illnesses that when combined with his age at 60 and other health problems, place him in danger should he contract COVID-19.").

Defendant has provided no evidence to show that his hypertension puts him at a high risk of either being infected with COVID-19 or having a bad outcome were he to be infected with COVID-19. Indeed, his hypertension appears to be controlled, and he has not indicated that he suffers any other health conditions. Accordingly, Defendant has not met his burden to show extraordinary and compelling reasons for release; thus, his Motion fails.

### III. <u>DANGER TO THE SAFETY OF ANY OTHER PERSON OR THE COMMUNITY</u>

Even if he could show extraordinary and compelling reasons, Defendant could be eligible for compassionate release, such that the Court would then proceed to an analysis of the factors under 18 U.S.C. § 3553(a), only if he is not a danger to other persons or the community. *See* U.S.S.G. § 1B1.13. "[T]he defendant has the burden of proof on the issue of his lack of danger to others and the community." *See United States v. Rodriguez*, No. 3:95CR772, 2020 WL 3260711, at *1 (N.D. Ohio June 13, 2020).

At Defendant's sentencing, the sentencing judge succinctly noted the facts of record:

> From the Court's perspective, this is a very serious matter. This was a defendant who was, essentially, the leader of the Middle Tennessee drug conspiracy. There were hundreds of kilos of drugs that were being transported through the Middle District and elsewhere. There was a significant money

> laundering scheme in connection with this. On top of that, there were threats to kill two witnesses, two critical witnesses in this case. In addition, the Court is disturbed that, even the defendant acknowledges that the government warned him about the discussions and threats about one witness, but the discussions continued and, in fact, involved a second witness. Although there's a -- although the sentence that the Court will impose may be -- may be considered harsh, I think it is actually reflective of the seriousness of the defendant's conduct to threaten two witnesses, to talk about killing two witnesses in a criminal proceeding or in any proceeding is an extremely serious matter. And to impose a sentence that would be reflective of just drug trafficking that he just fell into, I don't think would be a reasonable sentence.

(Doc. No. 1137 at 26-27). Based on this record, the Court cannot conclude that Defendant would not be a danger to the community if he were released. The Court recognizes these events happened nearly a decade ago. However, Defendant's actions were extremely dangerous and odious, and Defendant has done nothing (and quite frankly, would have difficulty doing so based on the record) to show the Court that despite this history, he would not be a danger to the community if released. Accordingly, the Court finds that Defendant would pose a danger to the community if he were released, thus dooming his Motion independently.

### IV. SECTION 3553(a) FACTORS

Although Defendant does not qualify for compassionate release, irrespective of how the Section 3553(a) factors apply to him, the Court will discuss the most salient Section 3553(a) factors, which collectively cut against granting compassionate release for him.

*The nature and circumstances of the offense* cut against compassionate release. As discussed above, Defendant was a local leader in drug and money laundering conspiracies which involved not just the importation and trafficking of hundreds of kilograms of cocaine and marijuana, but the possession of firearms and threats of violence against several people. For those same reasons, *the history and characteristics of the Defendant* also cut against compassionate release. Also for the same reason and to the same extent, and for the reasons discussed above in

connection with whether Defendant would be a danger if released, *the need to protect the public from further crimes of the defendant* also cuts against Defendant.

*The need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner* likewise does not cut in favor of compassionate release for Defendant. The focus in this case, as discussed above, is that Defendant's hypertension places him at a heightened risk of an adverse outcome from COVID-19, and his medical records indicate that his hypertension is being well-managed during his incarceration.

Moreover, the requested relief would undermine the need to "*promote respect for the law*," "*afford adequate deterrence to criminal conduct*," and "*avoid unwarranted sentence disparities.*" 18 U.S.C. § 3553(a)(2)(A), (B). To date, Defendant has only served 9 years of his 18-year sentence. *See United States v. Kincaid*, 802 F. App'x 187, 188–89 (6th Cir. 2020) (explaining that "the need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law permit the court to consider the amount of time served in determining whether a sentence modification is appropriate."). Enabling a defendant to serve only have of his lawfully imposed sentence tend to impair all of these objectives.

Moreover, especially considering that Defendant is (even now, after years of incarceration) not elderly, a nine-year sentence would represent an especially large departure from his guideline sentence. The record reflects that Defendant's offense level was 43, meaning that (even with his criminal history category of I), his guideline sentence was life. Even his sentence of 18 years was a below-guideline sentence, (Doc. No. 1139 at 2), and a nine-year sentence would be an especially large various from a life sentence. Although the guidelines of course are advisory only, and there is nothing wrong with below-guidelines in general, the Court can (and in this instance does) treat

such a large departure as tending to frustrate the objective of avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.[8]

Accordingly, to grant Defendant compassionate release would create an unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct. Additionally, a reduction of the Court's original sentence would also fail to reflect the seriousness of the offense Defendant committed and would not provide a just punishment for his conduct. It would also undermine the Court's attempt to use the sentence to promote respect for the law and serve as a deterrent for criminal conduct.

Thus, the Court finds that the Section 3553(a) factors do not weigh in favor of granting Defendant compassionate release, even if he did show extraordinary and compelling reasons, and that he were not a danger to the community.

## CONCLUSION

Compassionate release is an extraordinary remedy. *See*, *e.g.*, *United States v. Rizzo*, No. CR 16-20732, 2020 WL 2092648, at *3 (E.D. Mich. May 1, 2020). Such remedy is unavailable here because Defendant has failed to satisfy even its first requirement, *i.e.*, extraordinary and compelling reasons to justify it. Additionally, Defendant has not shown that he would not present a danger to other persons or the community or that the Section 3553(a) factors weigh in favor of granting his release.

For these reasons, Defendant's *pro se* Motion for Compassionate Release (Doc. No. 1179), and its supplement filed by his appointed counsel (Doc. No. 1195) are **DENIED**.

---

[8] "The point of the guidelines is to decrease sentencing disparities, an objective *furthered* by a within-guidelines sentence, as opposed to a sentence that varies above or below the advisory guidelines range. The very thing [the defendant-appellant] presumably wants—a below-guidelines sentence—is more likely to create disparities than eliminate them. There is nothing wrong, to be sure, with a below-guidelines sentence. It is just that a request for one [is not supported by] § 3553(a)(6)." *United States v. Swafford*, 639 F.3d 265, 270 (6th Cir. 2011).

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE